EMILE W. BAUER, Respondent, v. WEBER IMPLEMENT COMPANY, Appellant.

St. Louis Court of Appeals, May 31, 1910.

1. **STATUTE OF FRAUDS: Exchange of Real Estate: Complete Performance.** A contract for exchange of real estate is taken out of the Statute of Frauds by its complete execution or performance.

2. ———: **Stranger Cannot Set Up.** A stranger to a contract cannot set up the Statute of Frauds against it.

3. **FRAUD AND DECEIT: Contracts: Defense not Available to Stranger to Contract.** In an action of replevin, where plaintiff claims title through a contract made by him with a third person, a defense that the contract was procured through fraud practiced on said third person by plaintiff is not available to defendant, since said third person, and not defendant, was the proper party to assail the contract on that ground.

4. **TRIAL PRACTICE: Fraud and Deceit: Failure to Plead: Theory at Trial: Instructions.** In an action of replevin, where plaintiff claimed title through a contract made by him with a third person, defendant was not entitled to an instruction submitting the issue of the contract having been induced by fraud, not having pleaded fraud, and having tried the case, not on the theory that the contract was so induced, but that it was rescinded.

Bauer v. Implement Co.

5. **CHATTEL MORTGAGES: Liability of Purchaser from Mortgagor: Agreement to Assume Mortgage.** A promise by one who purchased two chattels to pay notes secured by a mortgage on one of the chattels as part consideration for the sale would not charge the other chattel with the lien of the mortgage as against him, although it was covered by the mortgage, the copy filed with the Recorder not showing that fact and the buyer having no knowledge of it.

6. ———: ———: **Effect of Failure to Record.** Generally, a chattel mortgage is not good against anyone but the parties to it, if it is not recorded, and a buyer is protected from the effect of such an instrument, if by some mistake in recording it its true effect is not shown.

7. ———: ———: **Effect of Purchaser Acquiring Knowledge of Mortgage After Buying.** Where one acquires title to chattels without notice or knowledge of a mortgage thereon, the fact that he subsequently learned thereof would not make it enforceable against him.

8. **EVIDENCE: Admissions: Compromise.** Evidence relating to a compromise of a disputed claim is not competent as an admission by a party thereto against interest.

Appeal from St. Francois Circuit Court.—*Hon. Chas. A. Killian,* Judge.

AFFIRMED.

*B. H. Boyer* and *J. A. Boughty* for appellants.

(1) A contract must be stated with reasonable certainty or it will be void. . And if memorandum is incomplete as to any essential part, parol evidence cannot be received to supply such omission. Ringer v. Holtzelaw, 112 Mo. 523; Dunham v. Hartman, 153 Mo. 629; Buckman v. Dry Goods Co., 91 Mo. App. 463, and cases cited. And when parol evidence is necessary to complete a written memorandum or contract it falls within the Statute of Frauds. King v. Wood, 7 Mo. 390; Whaley v. Hinchman, 22 Mo. App. l. c. 486; Bolck & Snyder v. Crowther, etc., 74 Mo. App. 483, and cases cited. (2) The Statute of Frauds is properly invoked as a defense under a plea of the general issue by timely objection

to the introduction of the contract and of the parol evidence offered to supply the same. Hackett v. Watts, 138 Mo. 511; Dunn v. McClintock, 64 Mo. App. 196; Boyd v. Paul, 125 Mo. 9; Scharff v. Klein, 29 Mo. App. 551, and cases cited. In the case at bar the objection made was timely and specific. See transcript, pp. 39 and 40. (3) The court erred in excluding testimony offered by defendant tending to show fraud in the procurement of the contract sued on in this case. It was competent for defendant to show fraud in procuring the contract even had it not been specifically pleaded. Stone v. Barrett, 34 Mo. App. 15; Auction Co. v. Mason, 16 Mo. App. 473; Young v. Glasscock, 79 Mo. 574; Greenway v. Jones, 34 Mo. 326. (4) The testimony offered by defendant and rejected by the court tending to show that long after the alleged acquisition of the personal property by plaintiff mentioned in the memorandum plaintiff worked for witness J. D. Counts in sawing lumber with that very machinery, and received from said Counts his wages and receipted therefor, was not only competent but very material as tending to show his recognition of title in said Counts, and was improperly excluded as embraced in a compromise arrangement. The statute relative to the inadmissibility to the matter made the subject of a compromise proposition has no application to the facts in hand. Sec. 751, R. S. 1899; Emmons v. Gordon, 125 Mo. l. c. 646; Burnham, Hanna, Munger & Co. v. Blank, 49 Mo. App. 62; Book v. Railroad, 72 Mo. App. 78. (5) The proposition is too well settled to need citation that a contract to be valid must be mutual and binding on both parties thereto and must be based upon a valuable consideration. (6) The parol evidence rule does not apply in an action to cancel an instrument for fraud. And parol evidence is admissible to show that the signature of a party was procured to a written instrument by fraud. 7 Current Law, p. 1825, note 73; Mining Co. v. Webster, 193 Mo. 364. (7) The possession by defendant of the engine in dispute was

prima facie evidence of its ownership thereof, and before plaintiff can recover he must show some general or special property in the engine, and the right of immediate and exclusive possession. Groves v. Parker, 38 Mo. 160; Garlside v. Nixon, 43 Mo. 139; Lisenby v. Phelps, 71 Mo. 522; Hardware Co. v. Hdw. Co., 75 Mo. App. 522; Westby v. Milligan, 89 Mo. App. 294; Bank v. Snyder, 85 Mo. App. 82. Instruction No. 5a, offered and asked by defendant was a proper declaration of the law and should have been given. (8) Instructions 8 and 9 given on behalf of plaintiff over the objections and exceptions of the defendant made and saved at the time were improper and highly prejudicial as constituting a virtual direction on the part of the court to the jury to find for the plaintiff. Neither of said instructions should have been given. (9) The court should have sustained defendant's application set up in its answer to require plaintiff to make J. D. Counts a party defendant to this suit. Sec. 544, R. S. 1899. The non-joinder of necessary parties defendant not appearing from the face of the petition, the objection was properly raised by answer. Sec. 598, R. S. 1899; Turner v. Lords, 92 Mo. 113; Lencke v. Tredway, 45 Mo. App. 507; Dannaway v. O'Rielly, 102 Mo. App. 718; Mills v. Carthage, 31 Mo. App. 143.

*B. H. Marbury* and *Edward A. Rozier* for respondent.

(1) The contract between Bauer and Counts was a valid contract and having been fully executed by both parties, cannot now be impeached. (a) Any appreciable consideration is sufficient to support a contract of this character. Wallan v. Figone, 107 Mo. App. 362; Green v. Higham, 161 Mo. 333; Anderson v. Gaines, 156 Mo. 664; Forbes v. Railroad, 107 Mo. App. 661; Brown v. Cory, 74 Mo. App. 466. (b) A party who contracts to deliver a certain thing will not be relieved of liability,

even if at the time of the promise he did not have the thing promised; hence it must follow that although he does not at the time of the promise have the thing promised, yet he has fully performed his contract if he obtains it and delivers it according to the terms of his contract. 1 Story on Contracts (4 Ed.), par. 463. (c) While the title may not have been perfect when the suit was commenced, specific performance may be decreed iff the title be perfected before judgment. Isaacs v. Skrainka, 95 Mo. 517; Luckett v. Williamson, 37 Mo. 338; Scannell v. Soda Fountain Co., 44 Mo. App. 78; Scannell v. Soda Fountain Co., 161 Mo. 603. (2) Appellant, Weber Implement Company, not having recorded its chattel mortgage covering the engine until April 26th, 1907, can make no claim to a title passing before that date. Sec. 3404, R. S. 1899; Rawlings v. Bean, 80 Mo. 614, and cases cited in Annotated Statutes, 1906. (a) The fact that the appellant did on July 9, 1906, file a chattel mortgage from Counts covering a separator only, and the later mortgage filed and recorded April 26, 1907, showed that the writing purporting to cover the engine was in a different ink, was sufficient ground for the jury to have found, as they probably did, that this insertion was made after the transfer to Bauer. (3) No substantial evidence was offered that Bauer ever had any knowledge of the mortgage on the engine, in fact the testimony of Judge Nations clearly indicates the contrary, as also does the representation made in the written agreement, and even if he had actual knowledge, sec. 3404 expressly provides that it cannot avail the appellant. Bryson v. Penix, 18 Mo. 14; Wilson v. Milligan, 75 Mo. 41; Sauer v. Behr, 49 Mo. App. 88; Harrison v. Carthage, 95 Mo. App. 80; Landis v. McDonald, 88 Mo. App. 335; Babitt v. Kelley, 96 Mo. App. 534; Bevans v. Bolton, 31 Mo. 437. (4) The written agreement was a valid contract supported by mutual consideration, and even if Bauer sold the Tetley-Klein lots to Counts at a higher price than he was to pay, it

was the agreement of the parties.   Green v. Higham, 161 Mo. 333; Marks v. Bank, 8 Mo. 316; Forbes v. Railroad, 107 Mo. App. 661; Strong v. Whybark, 204 Mo. 341; Wirt v. Schumann, 67 Mo. App. 163; Lamp Co. v. Mfg. Co., 64 Mo. App. 115; Murdock v. Lewis, 26 Mo. App. 234; Fitzgerald v. Fleming, 58 Mo. App. 188; Mason v. Gass, 62 Mo. App. 452.   (5)   The defense of fraud in the execution of this   agreement was abandoned by the defendant, and the sole attack was that it had been abrogated by a later agreement, and this defense was submitted to the jury.   (a)   The   matters stated by appellant under point 1 of its brief have no application, for the agreement was executed by both parties.   See v. Mallonee, 107 Mo. App.   721;   Suggett's Admr. v. Cason's Admr., 26 Mo. 221; Blees v. Jenkins, 129 Mo. 647; Taylor v. Penquite, 35 Mo.   App.   389; Mitchell v. Branham, 104 Mo. App. 480; Smith v. Davis, 90 Mo. App. 533.   (6)   The objections stated under point 2 have no merit as the property conveyed by the deed from Tetley-Klein Lumber Co. to   Counts   was shown to be the "Tim Glover" property by the testimony of the plaintiff and witness Tetley, and   also   witness Counts, and was directly connected with the agreement as having been made in pursuance thereof.   Lancaster v. Elliott, 55 Mo. App. 249; Belch v. Miller, 32 Mo. App. 397.   (7)   No testimony was offered to show fraud in the procurement of the contract.   (8)   Proof of statement made by Bauer in conversation with Counts as to a settlement of the amount due from Kollmeyer was properly denied as the evidence of Counts showed that same was in effort to compromise.   Cullen v. Ins. Co., 126 Mo. App. 412; 1 Greenleaf on Evidence, sec. 192; Railroad v. Farrell, 76 Mo. 183; Taussig v. Shields, 26 Mo. App. 318; Huetteman v. Viesselmann, 48 App. 582; Gorham v. Auserwald, 59 Mo. App. 77; Planing Mill v. Ins. Co., 59 Mo. App. 204; Fink v. Ins. Co., 60 Mo. App. 673; Herman v. Railroad, 77 Mo. App. 377; Hunter v.

Helsey, 98 Mo. App. 616; Smith v. Shell, 82 Mo. 215; Ferry v. Taylor, 33 Mo. 323. (9) In the contract Bauer agreed to trade certain houses and lots known as the "Tim Glover" property, this he did, hence it can make no difference whether he actually owned same or not. He did in fact cause to be conveyed to Counts the very property agreed upon, hence Counts has no cause of complaint for he received exactly what he had contracted for and the testimony of witness Tetley shows that it was conveyed at the request of Bauer.

GOODE, J.—Replevin for a steam engine which was sold by defendant to J. D. Counts, along with a separator and sawmill, in June, 1906. At that time defendant took from Counts, for part of the purchase price of said machinery, five notes amounting to $525, falling due as follows: Two on October 15, 1906, two on October 15, 1907, and one October 15, 1908. These notes were secured by a chattel mortgage executed by J. D. Counts to defendant, June 16, 1906, but what the mortgage covered is in dispute. The copy of it filed with the recorder of deeds of St. Francois county, July 9, 1906, covered nothing but the separator; whereas defendant contends the original mortgage covered the steam engine in controversy in the present case. The original was not filed with the recorder until April 22, 1907, and when introduced in evidence appeared on its face to cover both the separator and the steam engine; but an issue was made at the trial as to whether it was executed by Counts to cover the engine described in it, or an interlineation was afterwards made without authority from Counts, to make it appear the engine was mortgaged. Besides the defense that the chattel mortgage covered the engine in controversy and plaintiff had actual knowledge of the fact when he acquired title to it, if he ever did, the further defense is made that in truth he never acquired the title. The facts touching the

issue are these: The Tetley-Klein Lumber Company, a corporation, owned two houses and three lots on which the houses stood, in Farmington, St. Francois county. The lots were Nos. 7, 8 and 18, block 17, J. L. Haw's Addition to Farmington, and were known as the Tim Glover property. A mortgage to a building and loan association was on the property for six hundred dollars or upwards. Prior to March 17, 1907, plaintiff Bauer had negotiated with the Tetley-Klein Lumber Company to purchase the property and the company had offered it to him for five hundred dollars, he to assume the incumbrance to the loan association. After Bauer had agreed to take the property, he entered upon a negotiation with Counts to purchase the engine in controversy, and the result of the negotiation, according to the testimony for plaintiff, was that Counts traded him the engine, sawmill and separator for the houses and lots aforesaid, and by plaintiff's direction the Lumber Company executed a deed for them to Counts. It is certain a deed was executed, and, the evidence strongly inclines to prove, under the arrangement stated; but Counts testified it was pursuant to a different arrangement and his version will be stated presently. Bauer and Counts executed the following memorandum of an agreement, prepared by Wm. Kennedy, Count's father-in-law, when both parties were present, and signed by them in Kennedy's office as soon as it was drawn:

"This contract, made this 17th day of March, 1907, by and between J. D. Counts of the 1st part and Emile Baur 2 part, witness J. D. Counts has this day traded Bauer his engine, sawmill and separator for two houses and lots situated in South Farmington, known as the Tim Glover property; J. D. Counts agrees to pay Emile Bauer Five Hundred and Fifty dollars ($550) and assume the mortgage of the Building & Loan for Six hundred; Emile Bauer agrees to assume the payment of

a deed of trust now in the hands of Weber Implement Co. for Five Hundred and Twenty-five dollars on separator.

"J. D. COUNTS,
"E. W. BAUER."

"Received $8 as earnest money from J. D. Counts, March 17, 1907.

E. W. BAUER."

Without going into details, suffice to say the testimony of Samuel Tetley, president of the Tetley-Klein Lumber Company, as well as the testimony of other witnesses, was in corroboration of Bauer's version of the arrangement between him and Counts, and went to prove the memorandum supra expressed the agreement between those parties that was carried out. Bauer took possession of the steam engine the day the memorandum was signed and held possession until May 2, 1907, when it was taken from him by Marion Smith, acting as agent for defendant, and turned over to defendant. The engine was then standing in an alley by plaintiff's residence, from whence it was moved by Marion Smith for defendant, which claimed the right to possession on account of Counts' defaulting in the payment of some of the notes secured by the chattel mortgage; defendant insisting, as stated, said mortgage covered the engine. Shortly after it was taken by Smith, plaintiff instituted this action against him and defendant to recover possession, but as it appeared on the trial Smith had turned the engine over to defendant and the latter had sold it under the mortgage, the action was dismissed as to Smith. Defendant and Smith filed separate answers in the case and Smith alleged various facts going to show Counts was induced to execute the written memorandum whereby the engine was traded to plaintiff, by the fraudulent representation and promise of plaintiff. The alleged fraudulent representation by plaintiff was that he owned the houses and lots, whereas he did not own them, but

the Lumber Company did; the supposed false promise was to pay off the mortgage for six hundred dollars on them; or to give Counts six hundred dollars wherewith to pay the mortgage. No more will be said about the alleged fraudulent inducement of the contract for the trade, for two reasons: First, because that defense was not pleaded in the answer of the Weber Implement Company, against which the judgment was rendered; secondly, the defense of fraud in inducing the contract was abandoned at the trial in favor of the defense that Counts and plaintiff rescinded the contract shown by the memorandum immediately after executing the instrument. The defenses set up in the answer of the Weber Implement Company were a general denial; that the mortgage of Counts to defendant embraced the engine in controversy and said mortgage was recorded prior to the institution of this action, defendant took possession of the engine under the mortgage prior thereto, and afterwards sold it under the power of sale given in the mortgage; that plaintiff at the institution of this action was not, and never was, the owner of or entitled to possession of the engine, and never had any interest in it; that Counts was a necessary party defendant; that plaintiff had actual knowledge the mortgage from Counts to defendant covered the engine at the time this action was instituted and long prior thereto. Counts testified plaintiff agreed before the signing of the memorandum, to pay six hundred dollars of the amount of the incumbrance on the lots, and he called on plaintiff to do this as they went down stairs from Kennedy's office. Plaintiff said he would get the money from his brother and pay Counts, but did not have it then. Counts insisted on immediate payment and when plaintiff declined to pay at once, Counts said the contract would be canceled, to which plaintiff assented; that plaintiff then said he wanted to buy the engine and other machinery, would pay six hundred dollars for them and had a check for the

price or some other mode of raising the six hundred dollars, that Counts agreed to sell the property to plaintiff for said price, provided plaintiff would pay him within two weeks or thereabouts; that he (Counts) then had a contract with a man named Kollmeyer to do sawing and an arrangement was made between Counts and plaintiff by which the latter would have an interest in the work. The upshot of the transaction between plaintiff and Counts, according to the latter's statement, was that as they descended the stairs from Kennedy's office, they agreed to rescind the contract expressed in the memorandum and Counts gave plaintiff an option to buy the machinery for six hundred dollars within two weeks, but plaintiff did not buy it. He testified further plaintiff moved the engine to his (plaintiff's) home without the knowledge or consent of Counts; at the time of the sale to plaintiff he (Counts) told plaintiff the separator and engine were mortgaged to the Weber Implement Company, but there was no mortgage on the sawmill, and plaintiff bought after being thus informed. Counts said the transaction by which he acquired title to the two houses and lots from the Lumber Company had no connection with the sale of the engine to plaintiff, but after the option to buy had been given to plaintiff, he purchased the houses and lots from the Lumber Company for $1150, paying one hundred dollars cash, giving his notes for $450, and assuming the incumbrance to the building and loan association. The deed was dated April 5, 1907, recorded April 8, 1907, and recited the consideration was sixteen hundred dollars. Counts was unable to explain why this consideration was inserted, but it accords with the testimony of plaintiff and of Samuel Tetley. According to plaintiff, the consideration agreed on between him and Counts was sixteen hundred dollars, and thereby he would make a profit of several hundred dollars on the houses and lots. Counts took possession of the property when he received the deed from the Lumber Company and was in posses-

sion when the trial occurred. Tetley testified the prop-
erty had virtually been bought by plaintiff and was con-
veyed to Counts by plaintiff's order. Plaintiff denied
having been told there was a mortgage on the engine and
the testimony conclusively shows he had the mortgage
record run down by his attorney prior to signing the
memorandum. The attorney found no incumbrance on
the engine, but did find on file a copy of the mortgage
to the Weber Implement Company covering the sep-
arator. This fact agrees with the memorandum, which
recited that Bauer agreed to assume the payment of
the deed of trust held by the Weber Implement Com-
pany on the separator to secure $550. Such, we believe,
were the material facts, though, as related by the wit-
nesses, they run into minuter details. A verdict for
plaintiff was returned, assessing the value of the engine
at five hundred dollars, and the damages for taking and
detention thereof, at one hundred and fifty dollars. From
a judgment on said verdict this appeal was prosecuted.
The instructions for plaintiff are not complained of and
will not be recited. For defendant the court gave this
instruction:

"The court instructs the jury that if you shall find
and believe from the evidence in this cause that after
the signing of the written memorandum   or   contract
offered in evidence in this cause by plaintiff, that the
plaintiff and Jeff D. Counts did mutually agree to re-
scind and abrogate said written contract or memoran-
dum by verbal agreement, and that plaintiff did then
and there agree to pay Jeff D. Counts the sum of $600
for his (Counts') equity in and to the machinery men-
tioned in said written memorandum, then and in
that event you are instructed that said written
contract or written memorandum, was rescinded
and abrogated and that said verbal agreement
supersedes and takes the place of said written con-
tract or memorandum, and if you shall further find
from the evidence that plaintiff, E. W. Bauer, did then

and there agree with said Counts to permit him, the said Counts, to retain possession of said machinery until he, the said plaintiff, should pay the said sum of $600 to said Counts, and if you shall further find from the evidence that said plaintiff did not pay the said sum to said Counts and that said Counts did not deliver the engine in dispute to said Bauer prior to the time of the filing of the petition herein, then you are instructed that plaintiff cannot recover in this action. And in this connection the court further instructs the jury that the parties to a written contract or memorandum may rescind and abrogate the same by parol, and the court further instructs the jury that while the burden of proving the rescission or abrogation of the written contract rests upon the defendant in this cause, and that it must prove that there was a meeting of the minds of said plaintiff and said Counts to amount to a rescission and abrogation of said written contract or memorandum, yet the court instructs the jury that in order to prove such a verbal rescission or abrogation of said written contract or memorandum, it is not necessary to show an express agreement to that effect, but an agreement to rescind may be shown by or inferred from the acts and declarations of the parties, and the question as to whether or not there was such a rescission or abrogation of said written contract or memorandum, is a question for the determination of the jury under all the facts and circumstances in evidence in this cause."

Several instructions requested by defendant were refused. The first asked the court to advise the jury if they believed plaintiff was not the owner of or had no interest in the real estate mentioned in the written contract, but the Lumber Company owned said real estate at that time and plaintiff had not paid said company for the real estate and had no deed or written contract with the Lumber Company for the title to same, then there was no consideration for the contract between

plaintiff and Counts, and plaintiff cannot recover in this action. The second asked the court to instruct that if the jury believed there was no consideration for the contract between Bauer and Counts, said contract was void and the verdict must be for defendant. The third instruction was that if the jury believed plaintiff had actual knowledge at any time prior to the institution of this suit, the Weber Implement Company held a chattel mortgage against the engine and separator given by Counts to secure payment of certain promissory notes for $525, and prior to the institution of this suit Counts made default in the payment of said notes, and thereupon the Implement Company took the engine into its possession and sold same under the mortgage, the verdict should be for defendant. The fourth instruction was that if the jury believed plaintiff promised Counts, at the time of signing the written memorandum, to pay Counts six hundred dollars as part consideration for the exchange of the property therein mentioned, and then and there represented to Counts he was willing and able to pay said sum, and Counts signed the contract in reliance on those statements and thereafter plaintiff refused to pay, the written contract was void. Omitting the fifth refused request, which is unimportant, we come to the sixth, which, if given, would have advised the jury the written contract between plaintiff and Counts was without consideration and void if Bauer, at the time it was executed, had no interest in or title to the houses and lots mentioned in it. The seventh request declared if the jury believed the written contract between plaintiff and Counts was procured by false and fraudulent representations made to Counts respecting plaintiff's ownership of the houses and lots mentioned in the contract, and plaintiff represented himself as the owner of said property, when he was not the owner and had no title to it, and Counts relied on such statements, the contract was void.

I. Some of the points made by defendant on the appeal relate to the refused instructions, while others take a wider range. It is insisted the written contract between plaintiff and Counts was void because it provided for an exchange of real estate, and all the terms of the contract were not expressed in the memorandum; to-wit, the property was not sufficiently described and oral evidence had to be resorted to to identify the lots intended to be exchanged. This was an attempt by defendant to set up the Statute of Frauds and must fail for two reasons: First, because if the contract expressed in the memorandum was not rescinded, as Counts testified, but was carried into execution as plaintiff testified, then it was taken out of the Statute of Frauds by the delivery of the machinery to the plaintiff and putting Counts in possession of the real property; that is to say, by the complete execution or performance of the contract. [Winter v. Cherry, 78 Mo. 344; Hoyle v. Bush, 14 Mo. App. 408.] Second, defendant, who was a stranger to the contract, cannot set up the Statute of Frauds against it. [St. Louis, etc., R. R. v. Clark, 121 Mo. 169, 25 S. W. 192, 906.]

II. It is further insisted the arrangement between plaintiff and Counts shown in the memorandum was void because plaintiff, at most, had only an oral agreement with the Lumber Company about the real estate, and, this being invalid under the Statute of Frauds, plaintiff exchanged nothing of value with Counts for the machinery; that is to say, no consideration passed to Counts from plaintiff for the engine. What is said above is applicable to this proposition; defendant certainly cannot have an executed agreement between two other parties, with which agreement it had nothing to do, treated as a nullity, because not in conformity to the Statute of Frauds.

III. As regards the refusal of the instructions based on the alleged procurement by plaintiff of the

written contract from Counts by a fraudulent representation and promise, we might say Counts was the party to assail the contract for that reason; not the defendant. But suffice to say defendant pleaded no defense based on fraud; and, moreover, tried the case on the theory, not that the contract was induced by fraud, but that it was rescinded by plaintiff and Counts, and hence the title to the engine did not pass to plaintiff by virtue of said agreement, but was left in Counts.

IV. Another contention, although apparently not made in the court below, is that if plaintiff acquired the engine from Counts, he took it subject to defendant's mortgage, even though the copy of the mortgage then of record purported to cover only the separator and not the engine. To make this contention clear, it must be remembered that if the mortgage executed by Counts to defendant actually covered the engine, no instrument was on file in the office of the recorder of deeds of St. Francois county, which showed the fact, until April 22, 1907, or subsequent both to the signing of the contract between plaintiff and Counts and the execution of the deed from the Lumber Company to Counts. Defendant's argument is that in the memorandum contract between plaintiff and Counts, whereunder plaintiff claims title to the engine, he bound himself to pay off the notes secured by the chattel mortgage Counts had given to defendant; bound himself for $525, reciting however, it was secured on the separator. Counsel say inasmuch as plaintiff bound himself to pay the whole amount secured by the mortgage, he recognized the mortgage as in force, and if it actually covered the engine, even though the copy of it on file in the recorder's office did not so show, plaintiff acquired the engine subject to the mortgage. We do not appreciate the force of this argument. Plaintiff agreed to pay the notes, it is true; but this agreement could not charge

the engine with the lien of the mortgage against plaintiff, if otherwise he would have acquired title free from the lien; at least we know of no authority or principle for such a proposition and have been cited to none. Whether or not the mortgage could be enforced against property covered by it after plaintiff bought the property, did not depend on his agreement to pay the notes, but on notice to him of the contents of the mortgage; and likely effective notice could only be given by the record; for generally a chattel mortgage is not good against any one but the parties to it if it is not recorded; for it is the duty of the mortgagee to have it recorded, if he would have it good against third parties. [Bevans v. Bolton, 31 Mo. 437; State to use Meyer v. O'Neill, 151 Mo. 67, 52 S. W. 240.] Defendant might say it filed a copy of the mortgage in question for record, but by mistake the copy failed to show it covered the engine. The rule is that a buyer is protected from the effect of an instrument if by some mistake in recording the instrument, its true effect is not shown. [Terrell v. Andrew Co., 44 Mo. 204.] Whether this rule would protect a buyer where a chattel mortgage on the property bought had been erroneously recorded, or an erroneous copy filed in the recorder's office, if the buyer knew of the mistake and that thereby the copy failed to embrace the property he was purchasing, though the original embraced it, is a nice point, but need not be determined on this appeal; for it was not presented below and is not presented here. What defendant insists on now and insisted on in requests for instructions, was that if plaintiff learned, *at any time prior to the institution of this action,* defendant's mortgage included the engine, he was not entitled to recover; and beyond doubt if plaintiff had no knowledge of the fact when he bought, but acquired knowledge before he filed his petition in replevin, his title was not affected so as to preclude recovery. Instead he bought as an innocent purchaser for value and without notice of any lien, and con-

tinued thereafter to hold as such, having parted with the property he exchanged for the engine, believing the title to the latter was unincumbered.

V.   Much is said in the brief for defendant about some evidence it offered and the court excluded; but the evidence related to a compromise of a disputed claim and was incompetent as an   admission   by   plaintiff against interest.

The points raised on the appeal are not well taken; the case was fairly tried and instructed, and the verdict of the jury on the issues of fact was well supported by the evidence.   Far from thinking it is contrary to the weight of the evidence, our opinion is that it was right.

The judgment will be affirmed.   All concur.